ELIZA C. AUBRY et al.

*v.*

HENRY M. SCHNEIDER et al., executors.

[Decided May 17th, 1905.]

Husband and wife ordinarily hold a chose in action, made to them jointly during coverture, as tenants in common and not as joint tenants.

---

*Messrs. McEwan & McEwan,* for the complainants.

*Mr. Augustus A. Rich,* for the defendants.

STEVENS, V. C.

On May 17th, 1880, Eliza C. Aubry and three other persons executed a bond and mortgage for $16,000 to Louis Battais and

Michelle Battais. The mortgagees were husband and wife. In 1897 Louis Battais died. By his last will he gave to his wife the use and income of his personal property during her life, and he made her one of his executors. In 1904 Michelle Battais died. This interpleader bill is filed by the mortgagors, who allege that since the death of Michelle they have been unable to determine to whom of right the interest on the mortgage belongs; that on the one hand the surviving executor of Louis Battais claims one-half of it, and on the other the executors of Michelle claim the whole. The representatives of the respective interests make no objection to the form of the proceeding, and have each answered. The question is one of equitable cognizance, for, conceding that the right to sue upon the bond survived to the wife at law, the question still is, was she, in her lifetime, entitled, in her own right, and without reference to her husband's will, to the whole of the money, or would she have held one-half of it, when recovered, in trust for the personal representatives of her husband?

Counsel for the representatives of the wife argued that husband and wife were tenants by the entirety of the bond and mortgage, and thus took by survivorship. He relied upon the case of *Buttlar* v. *Rosenblath, 42 N. J. Eq. (15 Stew.) 652*, in which it was held that that species of tenancy still exists, notwithstanding the provisions of the Married Woman's act. The case was one of title to real estate. The case in hand is one of title to a chose in action, viz., a bond. The mortgage merely stands as a security for it.

Tenancy by the entirety arises where an estate in land is devised to the husband and wife, or where a joint purchase is made by them during coverture, there being no words in the devise or conveyance showing that the grantor intended them to take either as joint tenants or as tenants in common. *Fulper* v. *Fulper, 54 N. J. Eq. (9 Dick.) 431.* They are each seized of the entirety, and neither can sell without the consent of the other, and the survivor takes the whole. The characteristic features of this tenancy are survivorship and the equal interest of both in the fee or freehold—an interest indestructible by the husband. A conveyance of the fee by either without the other

is inoperative. *McDermott* v. *French, 15 N. J. Eq. (2 Mc-Cart.) 78.*

If we contrast this estate with the imperfect right which the wife, at common law, had in a bond or other chose in action made payable to herself and her husband, the radical difference between them will at once appear.

Says Addison, in his excellent work on contracts (*Add. Cont.* (*6th ed.*) *p. 753*) :

"Upon bonds and other personal contracts under seal, which have been entered into, during the coverture, with the wife separately or with the husband and wife jointly, the husband may sue alone, treating them as his own contracts, or he may elect to give the wife an interest therein and join her as co-plaintiff in the action."

And further on (at *p. 772*) he says:

"She is also entitled, by survivorship, to the benefit of all contracts under seal, entered into, during the coverture, with herself alone or with her husband or herself jointly."

The wife's interest in an obligation of this sort differed, then, from her interest as tenant by the entirety of land in the particular that during the joint lives the obligation was regarded as so completely the property of the husband that in an action at law, although the contract was joint in form, he might sue for it in his own name without joining his wife. If it survived to his wife, it did so by his permission. To denominate such a right tenancy by the entirety is only misleading. It is not so called in any case of authority.

But the Married Woman's act has entirely changed the old law. Section 3 reads as follows:

"The real and personal property and the rents, issues and profits thereof, which any married woman has received or obtained since the 4th day of July, 1852, or which she shall hereafter receive or obtain by purchase, gift, grant, devise, descent, bequest or in any manner whatever, shall be her sole and separate property as though she were a single woman."

The operation of this statute upon tenancy by the entirety has been somewhat peculiar. At common law, while husband and

wife were both seized of the entirety, so far as the *corpus* (if I may be permitted to use that expression) of the estate was concerned, the husband alone was entitled to the rents, issues and profits during the joint lives of himself and his wife. After that act had begun to operate, while they remained seized of the entirety of the fee so that neither could alien without the assent of the other, they became entitled in common each to one-half the rents, issues and profits. This must have been upon the theory that the right to them grew out of the right to the freehold estate; that the wife, being the owner of the entirety of that, was also, as a necessary consequence, jointly with her husband entitled to the rents, issues and profits, but that the moment her title to these vested in possession it had been, *instanter,* divested, under the operation of the common law rule which gave the wife's personalty to her husband, but that the effect of the Married Woman's act was to prevent this consequence;— to give to the wife that which, because of her ownership of the freehold, properly belonged to her. But how does she take these rents, issues and profits during the joint lives? As joint tenant or as tenant in common? As I read *Buttlar* v. *Rosenblath, 42 N. J. Eq. (15 Stew.) 652,* she takes as tenant in common. The question there was, could a creditor sell the interest of the husband? The court below held that the estate by the entirety had been altogether abolished by the indirect operation of the Married Woman's act, and that husband and wife held the land as tenants in common. This the court of errors and appeals denied. They said that the fee was still held as before, but that the rents, issues and profits were, during the joint lives, held (to use Mr. Justice Van Syckel's expression) "in common," and so they decided that a creditor could sell the husband's undivided interest in them. This decision was necessarily based upon the idea that the statute declaring that the wife shall take what she takes as "her separate property," the legislative intention was best effectuated by declaring that they held by distinct moieties—that is, as tenants in common.

Now it seems to me that, viewed in this aspect, the case cited has an important bearing upon the case under consideration. It is certain that the right of the married woman to an obliga-

tion taken in the joint names of herself and husband has undergone an important change. Whereas, before the passage of the act, her right, if so slender a thing may be called a right, depended upon the will or caprice of her husband, it has now become a stable right. The right, as it stood at common law, scarcely rose to the dignity of a *joint* obligation. If the husband chose, he could, as has been shown, sue in his own name, and have judgment and execution in his own name. It must, therefore, during their joint lives, have been, in the eye of the law, although in form a joint obligation, in reality and in legal contemplation a several one, if the husband elected so to regard it. The fact that the husband might join his wife in the suit, if he thought fit, only emphasized his power to deal with it as he willed. The Married Woman's act changed all this, and the question is, how did it change it? Did it make her a joint tenant, or did it make her a tenant in common? I think that it is more in accord with the purpose of the legislation and with the rationale of the decision in *Buttlar* v. *Rosenblath* to hold that in cases of this kind, in the absence of any decisive indication to the contrary, she will take as tenant in common. In the first place, this tenancy has been favored by the courts for at least two centuries. In a note to Blackstone's commentaries (*2 Bl. Com.* *193) it is said that in ancient times joint tenancy was favored by the courts of law because it was more convenient to the feudal lord and more consistent with feudal principles, but that these reasons have long ceased, and that a joint tenancy is, in the words ôf Lord Cowper (*York* v. *Stone, 1 Salk. 158*), regarded as an odious thing.

By the act, the wife, as against her husband, is to hold what she holds as her separate property. If husband and wife are deemed to hold choses in action, given to them jointly, by distinct moieties, each can, upon payment, receipt for one-half and hold the part receipted for in his or her own right. Suppose they should be deemed to hold as joint tenants, and the chose in action should be paid off, would they hold the fund realized and any investment of it as joint tenants, and would it, too, be subject to the incident of survivorship? Would a formal act, for example, a formal transfer, be needed to sever the tenancy?

As the law favors tenancies in common; as the *Buttlar Case* decides that rents are held in common; as the statute makes all the property of the wife her "separate property," a technical phrase, to which most complete effect will be given if her husband and she be held to take by distinct moieties, and as this species of holding will, in the great majority of cases, best effectuate the intentions and convenience of the parties, it would seem to follow that it must have been the legislative design, where there is no indication to the contrary, to give to the wife a tenancy in common rather than a joint tenancy in choses in action made to both of them. The reasons which induced the court of errors and appeals to hold, and as it seems to me to rightly hold, that the legislature did not intend to abolish tenancy by the entirety do not exist in the case of personal property. The act was designed to protect the wife. She did not need protection so far as the fee of the land was concerned, for her estate was as indestructible as was her husband's. As to the rents, she did need protection, and so she was held to have obtained a distinct moiety of them. By analogy she should be held to have a distinct moiety in that personal property which was hers only in name, and for so long a time merely as her husband suffered her to enjoy it.

But the same result will follow, so far as the case in hand is concerned, from the application of another rule, much more limited in its application. Certainly there is nothing in the Married Woman's act to indicate that it was the intention to create a joint tenancy in the case of a married woman where it would not have been held to exist in the case of other persons. If she should be regarded as standing in the same attitude to her husband as to any stranger, she would be entitled to only one-half of the principal and interest, for where the limitation or contract is, in point of form, such as, in ordinary cases, to create a joint tenancy at law, there are several exceptions to the rule that survivorship will be permitted in equity. Obligations held by traders furnish a familiar instance. And among the other exceptions, an enumeration of which may be found in *Elphinstone on the Interpretations of Deeds* (*Rule 105, p. *282*), is the case of persons advancing money on mortgage.

Such persons are, in equity, held to be tenants in common. Note to *Lake* v. *Gibson, 1 Lead. Cas. Eq.* \*185. Pomeroy (*Pom. Eq. Jur.* § 408) thus states the rule:

"This equitable doctrine (that equity leans strongly against joint ownership) is always applied to mortgagees. Where money is advanced by two or more persons, no matter whether in equal or unequal portions, and they take a mortgage to themselves jointly, in law their estate is joint and on the death of one the debt and the security would belong wholly to the survivor. In equity, however, the interest of the mortgagees is in common, and on the death of one the survivor is held a trustee for the personal representatives of the deceased mortgagee."

The case *In the matter of Albrecht, 136 N. Y. 91,* is very much in point, and it is all the stronger because *Buttlar* v. *Rosenblath* followed *Bertles* v. *Nunan, 92 N. Y. 152,* where it had been decided that a statute very similar to ours had not abolished tenancy by the entirety. *In the matter of Albrecht,* it was held that where a husband and wife each furnished half the amount of a loan and took as security a bond and mortgage, payable to them jointly, upon the death of one of them the interest of the deceased vested, not in the survivor, but in the personal representatives of the deceased. It was said, "the just inference is that each regarded it as a loan of individual property upon the strength of the security taken, and they became tenants in common of the bond and mortgage, with all the rights and incidents of such a relationship," and see *Wait* v. *Bovee, 35 Mich. 425.*

In the case in hand there is not the least evidence that the husband intended to make a gift to the wife. They are both dead. The transaction occurred twenty-five years ago. The evidence is meagre and inconclusive, but it would seem probable, from what is proved, that both advanced some money, and I think the presumption is that they did it in equal shares.

I am of the opinion, therefore, that one-half of the interest due belongs to the representatives of the husband and the other half to those of the wife.