HEINRICH FRETZ, respondent,

v.

CARL ROTH et al., appellants.

[Submitted December 12th, 1905.    Decided June 18th, 1906.]

1. A voluntary deed, executed by a husband through another, to his wife, conveying all his realty, will not, at the instance of the grantor, be declared void for improvidence, nor because of the absence of provision for revocation or reversion in the deed, nor because executed without the benefit of proper, independent and competent advice, unless there is satisfactory proof, also, that it was the act of a person whose mental capacity was so enfeebled that he did not understand the effect of the instrument, or of some other recognized ground for equitable interference.

2. Where a use is declared by a deed operating under the statute of uses, no other use or trust (not manifested in writing) can be shown to result.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Garrison, whose opinion is reported in *68 N. J. Eq. 516*.

*Mr. Frederick Beggs* and *Mr. Francis Scott*, for the appellants.

*Mr. William M. Rysdyk* and *Mr. Michael Dunn*, for the respondent.

The opinion of the court was delivered by

VREDENBURGH, J.

The decree appealed from declares void two warranty deeds of conveyance dated April 15th, 1891, by means of which was effected the transmission of title from the·complainant, through an intermediary, to his late wife, Louisa, of a house and lot of land in the city of Paterson, N. J. The same decree also adjudges that the defendant Carl Roth shall, within ten days,

convey to complainant the property, and makes perpetual an injunction which restrained Roth from proceeding with an ejectment suit against the complainant. By virtue of these deeds Louisa became seized of the fee of the property and remained so seized for more than ten years, and until her death, in September, 1901. She left a will devising the premises to her natural son, the said Roth, who, having brought ejectment for the premises against the complainant, the latter filed the present bill, seeking "that it be decreed that said Roth (and his wife) have no right, title or interest in said premises," and to restrain the ejectment suit. Neither fraud, accident, undue influence nor incapacity was charged in the bill of complaint as ground for relief. The specification for equitable relief made by complainant in his bill—to quote its language—is,

"that his wife, Louisa Fretz, at the time of her death, held title to the said land and premises under an agreement with your orator, which she failed to perform in that she was to have conveyed said premises to your orator at such time as he might request, or that she would make a will leaving the same to him absolutely; that although she died without executing and delivering the said deed to your orator, or without making said will as aforesaid, your orator is in equity entitled to have such agreement enforced by the decree of this court, and to have it decreed that the said Louisa Fretz, his wife, held title to the same in trust for him, and to be deeded or willed to him in case he survived her."

The right to any relief upon this specification, under the evidence offered, was denied by the learned vice-chancellor who heard the cause, and whose opinion refers to the material facts. He considered that there was, he said, "no testimony of a clear and distinct agreement between the parties made at the time of the conveyance, and if there were, it could not be taken advantage of by this complainant because of the statute of frauds and of the canon of evidence which forbids the reception of oral proof to vary written instruments."

To these conclusions, both of fact and of law, we agree, but we are unable to concur in the further view he expressed, which denies to the deeds in question their validity on the ground of improvidence under the principles of equity affecting voluntary conveyances of this character. A leading and instructive case dealing with the rules of equity governing the effect to be

given to voluntary deeds founded upon consideration of love and affection is that of *Legendre* v. *Goodridge,* reported in *46 N. J. Eq. (1 Dick.) 419,* decided by the late Vice-Chancellor VanFleet in the year 1890. His opinion states the settled equity doctrine applicable in these words, viz.: "Without proof of incapacity, fraud or undue influence, a deed which appears to have been executed under all the safeguards provided by law for the protection of the grantor against coercion and imposition, though supported by no consideration but love and affection, is entitled to *stand on its own inherent strength.* * * * The grantee is not required to prove that it was fairly obtained." The decree he there advised was affirmed unanimously by this court in *48 N. J. Eq. (3 Dick.) 308.*

The recent decision of this court of the case of *James* v. *Aller, 68 N. J. Eq. 666,* November 20th, 1905, quite distinctly, I think, reaffirms the same principle, although differently expressed. It is there epitomized by Chief-Justice Gummere, who delivered the opinion of the court, in the following terms, viz.: "A voluntary settlement by a father, after a second marriage, on the children of the first marriage, covering substantially all his property, but executed when he was steadily accumulating money, with knowledge of the effect of the instruments, was not subject to revocation in equity at his instance as improvident." After critically distinguishing and reconciling the cases relied upon to sustain the decree below (which set aside the deeds questioned in that case), the opinion proceeds to give effect to the presumptive and inherent force of the terms of the instruments themselves, and lays down the rule that "a gift absolute in its terms made voluntarily, and with a full understanding of its effect, cannot be revoked by the donor either by his own act alone or with the aid of a judicial tribunal." The conveyances attacked in this latter case were made by a father to his children of his homestead and other property, and the opinion, after referring to the proofs sustaining the mental capacity of the grantor to convey away the property he had acquired, considers and determines the rationale of the principle which, I think, lies at the very root of the controversy now before us. In explaining the rea-

sons upon which the reversal of the decree of the court of chancery was based, the opinion continues as follows, viz.: "It may well be doubted whether a man in such a situation necessarily acts improvidently in giving to his children the property which he has then accumulated. But assuming this to be so, it does not, in our view, afford any ground for declaring such a transaction voidable at his option. The law permits anyone to dispose of his property gratuitously, if he pleases, provided the rights of creditors are not injuriously affected thereby. He may, if he sees fit, reserve to himself the right to revoke his gift, or, if he desires, he may make the gift absolute and irrevocable, and his power in this regard *does not depend upon the providence or improvidence of his act.*" I have thus quoted quite fully the reasons given for this decision in this court because they seem to bear directly upon somewhat opposing views of the subject elaborately discussed and apparently fortified by numerous authorities cited in the opinion below. But these authorities will be found to be clearly distinguishable, I think, in their essential facts from the case at bar. Many of them deal with, and are only applicable to, the acts of grantors whose mental capacity to execute their deeds was, by reason of either old age or disease, much weakened and enfeebled, if not found to be below the normal standard; such, for instance, as in the cases of *Anderson* v. *Elsworth, 3 Giff. 154;* 7 Jur. N. S. 1047; *Coffey* v. *Sullivan, 63 N. J. Eq. (18 Dick.) 296; Collins* v. *Collins, 63 N. J. Eq. (18 Dick.) 602; Thorp* v. *Smith, 63 N. J. Eq. (18 Dick.) 70, 92; Grant* v. *Baird, 61 N. J. Eq. (16 Dick.) 389; White* v. *White, 60 N. J. Eq. (15 Dick.) 104; Mulock* v. *Mulock, 31 N. J. Eq. (4 Stew.) 594.* In these cases it should be noted that the absence of provision for revocation or reversion in the deeds, and the fact that many of them were executed without the benefit of proper and competent advice, became important factors in their decision only because of the lack of normal mental capacity of the grantors. In the others cited certain elements deemed material to their decision existed which do not exist in the case under review, such as the delinquency (adultery) of the wife, fraud or undue influence, or accident or mistake, and the like.

Nor does the case at bar seem to us to come within the operation of the general principle stated in *2 Story Eq. Jur.* § *1374*, referred to below. Its language is as follows, viz.:

"Thus, for example, if a husband should, by deed, grant *all* his estate or property to his wife, the deed would be held inoperative in equity, as it would be in law, for it could in no just sense be deemed a reasonable provision for her (which is all that courts of equity hold the wife entitled to), and in giving her the *whole* he would surrender *all his* own interests."

Without going into a detail of the evidence, it is apparent from it (and such was the construction put upon it by the vice-chancellor), that the conveyed house and lot constituted but a portion in value of the husband's entire property.

In *Garnsey* v. *Munday, 24 N. J. Eq. (9 C. E. Gr.) 243* (the authority especially invoked to sustain the position taken below), the late Chancellor Runyon, in reviewing the facts, considered, to use his language on page 248 of the opinion, that "there is no room for doubt that the grantor was induced * * * to execute a voluntary deed whose effect she and they not only did not understand, but, on the other hand, misapprehended, and which, so far from being according to their intentions, was, in two very important respects at least, admittedly precisely the reverse."

No such inference is justifiable in the present case, either from the charges of the bill or from the evidence. Taking the complainant's own version in his bill of his alleged "arrangement" with his wife, there was no improper procurement of the deed from him by her, nor any false statement by her to him as to any fact, nor any misapprehension of any fact by them. His charges against her consist of alleged breaches by her of parol promises to be performed in the remote future. It is evident from the further statements of the bill, as well as from the testimony, that the complainant voluntarily executed the deed. After its delivery he did not insist upon nor take any legal steps to compel his wife to reconvey the property to him upon her alleged failure so to do at his request. Her failure to leave it to him by her will, if it be believed that she promised him to that effect, became at most only a broken verbal promise, without mu-

tuality of promise or other consideration to support it, and was void under the statute of frauds. The complainant's mental capacity to execute the deed has not been questioned by the charges of the bill, nor do we think that it has been seriously, much less successfully, attacked in the proofs. He was about forty years of age, in the prime of life, and the evidence is replete with instances of his successful transactions of various kinds of business and of his accumulation of property. It is remarked in the opinion below that he "was ignorant of our language," and "had no understanding, in the proper sense of that word, as to what the effect of the conveyance was." But it cannot be conceded that his ignorance of our language can have any controlling weight under the circumstances. He certainly must have understood its contents. That instrument was executed, as well as acknowledged, by him under all the legal formalities placed by our statute for the protection of the ignorant and unvigilant around such solemn transactions. The truth of the statements of the acknowledging officer's certificate upon the deed—that its contents were made known by him to the grantor at its execution —has not been denied nor even questioned by the complainant. Presumably that officer did his duty, and in making known its contents, explained and translated them into the complainant's language, or at least into words and expressions the meaning of which the grantor fully then understood. The proofs, extrinsic of the deed, show that the complainant could not have been very ignorant of the English language, and could not have misunderstood the nature and effect of his grant. Thomas W. Randall, a well-known and reputable lawyer of the city of Paterson, who drew the papers, testified, without contradiction, that the complainant came with his wife to the witness when the papers were signed, and that "they understood thoroughly" the nature of the papers, and that he "gave them both to understand what the papers were." But there is still more convincing proof from the complainant's deliberate admissions in his bill that he understood not only the contents, but also the effect of the conveyances he was making to his wife. In it he charges that it was (to quote)

"arranged between your orator and his wife, Louisa Fretz, that before departing from the United States on his proposed visit, and in the event of anything happening him while absent, he would transfer the premises hereinabove described to his wife, in trust for him, upon the express understanding and arrangement that when he returned home, and at his request, the said Louisa Fretz would reconvey said premises to your orator, or that she would make her will leaving the said property to him,"

and that in pursuance of this agreement he conveyed the premises *"by deed of warranty,"* through an intermediary, to his wife. He therefore knew that he was to give a "deed of warranty" to his wife, conveying the property to her, and that is exactly what he did in fact. He does not in his bill allege, nor does he testify, that he supposed that the deed he gave contained a trust clause, or that he was misled or deceived in any respect as to its contents or as to its effect either in fact or in law. On the contrary, his donative purpose toward his wife in executing the deed is exhibited by the following extract from his testimony, viz.:

"*Q.* Well, at the time you were talking about going, was there anything said about turning the property over to your wife?
"*A.* Yes.
"*Q.* Well, now, what was said?
"*A.* Well, she said to me that I should sign the property over to her, in case there was anything happened on the water, *that she would have the property.*"

Even if it be admitted that the complainant did not understand the legal effect of the deed he gave, it, nevertheless, must be held, under long-settled principles, that he is remediless. He was bound to know that a trust, not manifested in writing, could not be implied in his favor. His deed declared, by its *habendum* clause, the use to be for the grantee. Where a use is declared by a deed operating under the statute of uses, no other use or trust, not expressed in writing, can be shown to result. *Coffey* v. *Sullivan, ubi supra,* and authorities there cited. The deed he seeks to repudiate he suffered to remain in the possession of his grantee unchallenged and unquestioned for more than ten years. In the meantime death has intervened to seal the lips and silence forever the tongue of the only person, other than himself, who had intimate knowledge of the mutual inten-

tions of the two parties in interest, and of all the facts leading up to and surrounding the transaction. As the case stands, the presumption of the donative purpose of the husband toward his wife, inherent in the language of the deeds themselves, has not, we think, been overcome by legal evidence, entitled to weight, and consequently the decree invalidating the deeds should be reversed.

*For affirmance*—GARRISON, GARRETSON, HENDRICKSON, REED, VROOM—5.

*For reversal*—THE CHIEF-JUSTICE, FORT, PITNEY, SWAYZE, BOGERT, VREDENBURGH, GREEN, GRAY, DILL—9.