This is a suit brought by a husband against his former wife for an accounting of real and personal property turned over by him to her.
It appears that for some time after the marriage they lived together more or less happily. Part of the time they lived with an aunt. The wife had nothing, the husband very little. After the death of the aunt, the man came into a considerable property. With these funds a house was purchased in their joint names. This was afterwards transferred to the wife, who also took possession of all the personal property, furniture, jewelry, c. She then secured a divorce from him.
Complainant contends that it was not his intention to make an absolute gift to his wife, but that he conveyed the property to her for safe keeping because he was at times irresponsible on account of heavy drinking. Defendant states that she requested her husband to make the transfer because he was drinking a great deal and she wanted to protect him from losing the property.
Edward R. McGlynn, a member of the bar, whom the parties consulted as to their marital difficulties, testified that his understanding was that the conveyances were to be temporary only.
There is testimony, also, that the man conveyed, in addition to his own estate, certain moneys belonging to his mother; and it also appears that he is a man of low mentality, owing to excessive drink, and had no independent advice.
However, there is one fact that is undisputed. The man transferred everything in the world that he possessed and rendered himself absolutely penniless. I think the decision of this case should rest squarely on this fact. *Page 487 
In the case of Fretz v. Roth, 70 N.J. Eq. 764, the court of errors and appeals said (at p. 768):
"Nor does the case at bar seem to us to come within the operation of the general principle stated in 2 Story Eq. Jur. §1374 [3 Story (14th ed.) § 1801]. Its language is as follows, viz.: `Thus, for example, if a husband should by deed grant all his estate or property to his wife the deed would be held inoperative in equity as it would be in law, for it could in no just sense be deemed a reasonable provision for her [which is all that courts of equity hold the wife entitled to], and in giving her the whole he would surrender all his own interests.'"
The court found that in the case before it the husband conveyed only a portion of his property. Nevertheless, the above principle was enunciated as a general principle and with approval. This case has been cited in subsequent decisions by our courts twelve times — ten times in this court and once in the court of errors and appeals, and once in the prerogative court. In none of these cases is the principle above stated criticized, modified or set aside. Mr. Justice Story, in stating this principle cites the English case of Beard v. Beard. This is reported in 3 Atk.2 (26 Eng. Rep. Ch. 6, Wiliam Green Sons, Edin. 1903). It holds as follows:
"The law will not permit a man to make a grant or conveyance to the wife in his lifetime. Neither will this court suffer the wife to have the whole of the husband's estate while he is living, for it is not in the nature of a provision which is all the wife is entitled to." Vide Lucas v. Lucas, 1 Atk. 270; Watkyns v.Watkyns, 2 Atk. 97; Stoit v. Ayloff, 1 Ch. Rep. 60.
It is therefore clear that this doctrine has been for many years incorporated into the law of England.
30 Corp. Jur. § 288 says, "at common law a gift of personal property to a wife is void." Citing 17 N.J. Law 407.
In 13 R.C.L. 1377 § 424, it stated:
"It seems that a court of equity will not under all circumstances sustain a conveyance by a husband to his wife. 69Lawy. Rep. Ann., note. The principle on which these courts *Page 488 
seem to have acted in this respect is that when it appears that the grant to the wife is nothing more than a reasonable provision for her the courts will sustain it; but if it appears to be otherwise, as for instance he by deed grants all his estate or property to her, the deed will be held inoperative in equity as it would in law; for it could in no sense be deemed a reasonable provision for her which is the utmost that courts of equity will hold a wife entitled to. Warlick v. White, 86 N.C. 139; 41Am.Rep.; Benedict v. Montgomery (Pa.), 7 Watts, c., 238;42 Am. Dec. 230."
 69 Lawy. Rep. Ann. 354, note, says:
"Another rule is that the man must not impoverish himself. It is against public policy to permit a man to divest himself of all his property so as to create the possibility of his becoming a public charge. A settlement by a man of his whole estate upon his wife will not be upheld. O'Doherty v. Ontario Bank, 32N.C.C.P. 299."
"A man may make a gift to his wife without the intervention of a trustee, and equity will hold it good if it be no more than a reasonable provision for her, be proportioned to his circumstances and not hurtful to his creditors. The deed will not be upheld if it is for all the husband's property. A conveyance which denudes a husband of all or the greater part of his property is much more than a reasonable provision for the wife."Coates v. Gerlock, 44 Pa. 43.
In Louisiana it provided by statute that a donation intervivos shall in no case divest the donor of all his property. He must reserve for himself enough for a subsistence. If he does not the donation is void for the whole. 105 Rev. Code (La. 1899) § 1497.
In Pearce v. Stines, 79 N.J. Eq. 51, Vice-Chancellor Stevens said (at p. 55): "I think the practical rule to be deduced from these cases is that a donor having barely sufficient property to sustain himself for the rest of his life shall not irrevocably and without advice give away so much of it as to leave himself an object of charity."
In the case of Slack v. Rees, 66 N.J. Eq. 447, the court of errors and appeals, speaking through Chief-Justice Gummere, said (at p. 448): *Page 489 
"That the absence of such advice [independent] will invalidate a deed of gift, which contains no power of revocation, where a relation of trust and confidence exists between the donor and donee, is not denied, and, indeed, it was so held by the vice-chancellor. He seems to have considered, however, that such relationship was not shown, unless it was made to appear that the donee occupied such a dominant position toward the donor as to raise the presumption that the latter was without power to assert his will in opposition to that of the donee. But this is not the situation. The rule has a much broader sweep. Its purpose is not so much to afford protection to the donor against the consequences of undue influence exercised over him by the donee as it is to afford him protection against the consequences of voluntary action on his part, induced by the existence of the relationship between them, the effect of which upon his own interests he may only partially understand or appreciate. The following citations from our own decisions make this plain: `In all transactions between parties occupying relations whether legal, natural or conventional in their origin, in which confidence is naturally inspired, or, in fact, reasonably exists, the burden of proof is thrown upon the person in whom the confidence is reposed, and who has acquired an advantage, to show affirmatively not only that no deception was practiced therein, no undue influence used, and that all was fair, open and voluntary, but that it was well understood.' Hall v.Otterson, 7 Dick. Ch. Rep. 528; S.C., on appeal, 8 Dick. Ch.Rep. 695. `Where parties hold positions in which one is more or less dependent upon the other, courts of equity hold that the weaker party must be protected, and they set aside his gifts if he had not proper advice independently of the other.' Haydock
v. Haydock, 7 Stew. Eq. 575. `The rule to be gathered from the English and American cases is that the burden of proof is cast upon the donee to establish that the doner fully appreciated what he was doing, or, at all events, in the doing had the benefit of disinterested and competent advice.' Coffey v. Sullivan, 18Dick. Ch. Rep. 302."
The case of Warlick v. White (41 Am. Rep. — Ed. 1882),86 N.C. 453 (at p. 454), holds as follows: *Page 490 
"In considering the point as to the extravagance of the provision attempted to be made, it must be borne in mind that by means of deed and the bill of sale, executed together, and both to take effect on delivery, it was intended to pass the whole estate of the husband, real and personal, immediately to the wife. The question, therefore, is exactly the same as if he were living and the attempt to set up the deed was directed against him and not his heir. The leading case on the subject is Beard
v. Beard, 3 Atk. 72, in which Lord Hardwicke emphatically pronounced it to be against the policy of the law of England that any husband should exhaust his estate and impoverish himself in an effort to make a provision for his wife, and that the court would not uphold a conveyance from him to her if such should be its effect. Still more to the point is 2 Story Eq. Jur. 1374, where it is said that if a husband should by deed grant all his estate or property to his wife the deed would be held inoperative in equity as it would be in law, for it could in no sense be deemed a reasonable provision for her which is all the courts of equity hold the wife entitled to, and in giving her the whole he would surrender his interests. On both occasions heretofore mentioned, when the question as to the effect to be given to the husband's conveyance has been before this court especial pains have been taken to declare the policy of the court to be that no support will be given to an extravagant provision exhaustive of the husband's estate."
It seems to me, therefore, that the equitable principle of Justice Story, cited with approval by the court of errors and appeals in Fretz v. Roth, supra, is still in force in this state, and that the same doctrine has been approved in other jurisdictions, as well as by eminent text writers. It appearing that this man divested himself of all his estate, even if he had independent advice, which does not appear, a court of equity will not sustain so improvident and unreasonable a conveyance.
I will advise a decree directing an accounting, according to the prayer of the bill. *Page 491