The Morsemere Realty Company became a borrower on its promissory note for $7,000 from Franklin National Bank, July 23d 1926, and continuously thereafter was a debtor to *Page 279 
the bank, borrowing further sums from time to time, until on August 1st, 1932, it owed the bank $55,000. James H. Freile was president of the Realty Company and of the bank and was an endorser on the Realty Company's notes. On the last named date the Realty Company gave its two demand notes to the bank, both endorsed by Freile and others, one for $18,000 and the other for $37,000. On February 2d 1933, after demand on the maker for payment and refusal, the bank protested the notes and gave due notice of protest to Freile. At that time the $18,000 note had been reduced to $15,500, so that a total of $52,500 was then due the bank.
December 15th, 1932, First National Bank of Jersey City loaned Morsemere Realty Company $4,500 on its promissory note endorsed by Freile and others, payable March 15th, 1933. Freile died February 8th, 1933, and when this note fell due, notice of protest was sent to his last residence. In the absence of proof that the notary knew of Freile's death, this was proper notice of protest. Comp. Stat. p. 3746 § 98.
Freile left a will on which letters testamentary were issued to his wife, Margaret A. Freile, on an undisclosed date. She died July 17th, 1933, and letters testamentary on her will were granted August 1st, 1933 (according to the answer) to Margaret S. Freile, and on August 22d 1933 (according to the evidence) letters of administration with the will annexed were granted to said Margaret S. Freile on the estate of James H. Freile. Franklin National Bank and First National Bank filed verified proof of their claims either with Margaret A. Freile, executrix, or with Margaret S. Freile, administratrix cum testamentoannexo under the will of James H. Freile and thereafter received notice that their claims were allowed as valid against his estate. Thus the two creditors have a standing to file a creditors' bill to set aside transfers of property alleged to have been made by Freile in fraud of creditors. Haston v.Castner, 31 N.J. Eq. 697.
After Freile's death it was discovered that on April 18th, 1932, Freile had assigned to his wife, his interest in fifty-five shares of paid-up stock of Franklin Building and Loan *Page 280 
Association of the par value of $11,000 and that a new certificate therefor had been issued in her name. The evidence does not disclose in what name this stock had been originally issued, but the bill charges and the answer does not deny that prior to Freile's assignment these shares were evidenced by four certificates issued between September 25th, 1929, and June 3d 1930, all in the name of "James H. Freile and Margaret A. Freile, his wife," and in counsels' briefs the certificates are referred to as having been so issued.
It was further discovered that by two assignments dated September 30th, 1932, Freile had assigned to his wife his interest in twelve mortgages which had been executed to him and his wife as mortgagees, for a total of $65,000. The earliest of the mortgages is dated March 11th, 1914, and the latest is dated March 2d 1931.
The two banks join in this suit against Margaret S. Freile as administratrix cum testamento annexo of James H. Freile and as executrix under the will of Margaret A. Freile, to set aside said assignments of stock and mortgages on the ground that they were made without consideration and with intent to delay or hinder complainants in collecting their said debts and are fraudulent as to complainants.
Attempt was made to show that the assignments were given in discharge of an antecedent debt due from Freile to his wife. The burden to satisfy the court of the bona fides of the transaction, is on the defendants. Severs v. Dodson, 53 N.J. Eq. 633; Lysakowski v. Blauvelt, 115 N.J. Eq. 501, and they have not sustained it. I am of the opinion that the transfers of building and loan stock and of the mortgages were voluntary and without consideration. This fact, under the old Fraudulent Conveyance act (Comp. Stat. p. 2618 § 12) would have been sufficient to make the transfers fraudulent in law, without regard to whether they were made with intent to hinder, delay and defraud creditors (Washington National Bank v. Beatty, 77 N.J. Eq. 252), but under the Uniform Fraudulent Conveyance act (Cum.Supp. Comp. Stat. § 44-145) it must also appear that the transfer of those assets rendered Freile insolvent within the *Page 281 
meaning of the act (Conway v. Raphel, 102 N.J. Eq. 531; KearnyPlumbing Supply Co. v. Gland, 105 N.J. Eq. 723) and the burden of proving insolvency is on complainants. Conway v. Raphel,supra. Section 44-143 of the act provides that "a person is insolvent when the present fair saleable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."
The complainants offered in evidence a financial statement under date of February 6th, 1931, made by Freile to Franklin National Bank while he was endorser on Morsemere Realty Company notes. The statement showed total assets of $114,300, consisting of $7,000 cash in bank, $32,300 bank stocks and $75,000 first mortgages and no direct liabilities. The statement further disclosed that he also owned, jointly with his wife, unencumbered real estate valued at $95,000, building and loan shares valued at $22,000 and other stocks for which no value was stated, which jointly owned property he did not include in his net assets of $114,300. Said statement was the only direct evidence offered on the state of Freile's assets from its date to his death. That his financial condition changed after the date of the statement, however, is evident from the fact that after his death it was found that his liabilities amounted to $106,000 and his assets were $10,720, but no evidence was offered to show when he actually became insolvent and I cannot find that when he transferred to his wife his interest in building and loan shares not listed among his assets, fourteen months after he had made his financial statement of February 6th, 1931, his net assets of $114,300 had been entirely wiped out (to say nothing of the joint holdings with his wife in land and other stocks). Nor can I find that such transfer of stock was made by Freile with actual intent to defraud his existing or his subsequent creditors and therefore I conclude that the complainants' attack on said transfer of stock must fail. Although there is no direct evidence to show his financial condition six months later, when he assigned to his wife his interest in $65,000 of mortgages, I think it a fair inference *Page 282 
that he was then insolvent, or that his assignment of such interest made him insolvent. All those mortgages, except one, were in existence when he made the bank statement of February 6th, 1931, and since he had been at pains to show on that statment all assets he owned and in which he had an interest, the $75,000 first mortgages shown thereon must have included those (save one) covered by his assignment to his wife. The presumption of insolvency on September 30th, 1932, is justified by the condition in which his estate was found at his death four months later and upon a statement that he made to the scrivener who prepared the assignments, that he was much worried about his obligations in connection with the Morsemere Realty Company and the defendants did not attempt to controvert insolvency. I conclude that the assignments of Freile's interest in the mortgages should be set aside.
The question then presented is: What interest did Freile have in the mortgages when he executed assignments thereof? In other words: What did he transfer to his wife which the complainants are entitled to have her estate return? There is no evidence to show the circumstances under which the mortgages came to be executed to husband and wife, or what their intention was as to their respective interests therein and therefore their estate or interest must be determined from the words used to place title in them. Ten mortgages name "James H. Freile and Margaret A. Freile, or the survivor of either," as the mortgagees. A joint tenancy may be created in personal property, with the same incidents of joint control and survivorship as in real property, by the use of proper words for that purpose. New Jersey Title, c., Co. v.Archibald, 90 N.J. Eq. 384; affirmed, 91 N.J. Eq. 82. Such a tenancy in personal property in husband and wife is not the same estate as tenancy by the entirety in real estate, in that in the case of personal property either husband or wife may sever their unity of interest without the consent of the other. Aubry v.Schneider, 69 N.J. Eq. 629; Dover Trust Co. v. Brooks,111 N.J. Eq. 40. The words used in the ten mortgages to *Page 283 
describe the estate which was to vest in the mortgagees are appropriate to the creation of a joint tenancy with right of the survivor to take the whole, in case there should be no severance of interest by either husband or wife. East Rutherford Savings,c., Ass'n v. McKenzie, 87 N.J. Eq. 375; New Jersey Title, c.,Co. v. Archibald, supra; Commercial Trust Co. of N.J. v.White, 99 N.J. Eq. 119; affirmed, 100 N.J. Eq. 561. But I think the situation as to the two mortgages in the name of "James H. Freile and Margaret A. Freile, his wife," without more, is different. As I have said, there is no tenancy by the entirety in personal property and when title to that class of property is held by husband and wife, without words descriptive of joint tenancy or of survivorship, they hold as tenants in common.Aubry v. Schneider, supra; Flemming v. Iuliano, 92 N.J. Eq. 685; Central Trust Co. v. Street, 95 N.J. Eq. 278; Oppenheimer
v. Schultz, 107 N.J. Eq. 192.
The result is that the assignments of the last two mentioned mortgages transferred Freile's undivided half interest as a tenant in common therein and should be set aside as to such interest. As to the ten other mortgages, if Freile were alive it might be decreed that title to them be restored as it was prior to the assignment thereof, in order that the claims of his creditors might attach to his interest, but to do so now would be of no avail, because Freile predeceased his wife before the bill filed in this case and upon his death she became the sole owner of said ten mortgages by right of survivorship and there is now no interest therein which Freile's creditors can seize. J. A.Steinberg Co. v. Pastive, 97 N.J. Eq. 52. *Page 284