John M. Wall and Marie Louise Stout were married in 1899, and sometime thereafter bank accounts were constituted to the credit of Marie Louise Wall and John M. Wall and the survivor of them as joint tenants, in the First National Bank and the Bound Brook Trust Company, both in Bound Brook, New Jersey, and also in West Side Savings Bank in New York City. Other than the records of these banking institutions which disclose the character of the accounts, there is no proof of the circumstances accompanying and surrounding their creation. All parties now in interest assume from the words used that the original ownership of these accounts abided in Mr. and Mrs. Wall as joint tenants. New Jersey Title,c., Co. v. Archibald, 90 N.J. Eq. 384; 107 Atl. Rep. 472;affirmed, 91 N.J. Eq. 82; 108 Atl. Rep. 434; Franklin NationalBank v. Freile, 116 N.J. Eq. 278; 173 Atl. Rep. 93; affirmed,117 N.J. Eq. 405; 176 Atl. Rep. 167.
On December 29th, 1936, Mrs. Wall, while residing in New York, was adjudged by the Supreme Court of that state to be a mentally incompetent person and incapable of conducting her economic affairs. Her husband was thereupon nominated "committee" to assume, in a fiduciary capacity, the custody of her property and the direction of her business requirements.
Pursuing the narrative of facts chronologically, it may next he disclosed that on March 9th, 1937, Mr. Wall terminated the joint account in the Bound Brook Trust Company by withdrawing the entire credit and depositing the fund to his individual use in the same institution. On July 1st, 1937, he likewise concluded the joint account in the First National Bank, and with the fund thus withdrawn, he simultaneously opened an account in his own name. Subsequently, on July 12th, 1937, he collected the small joint account in the West Side Savings Bank. *Page 585 
Mr. Wall, in his capacity as the committee of his wife's estate, presented an account to the Supreme Court of New York which was apparently approved on March 28th, 1938. This account reveals a balance in hand of $1,051.29. It is also evident that Mr. Wall additionally received in November, 1938, a sum of $974.82 of income due to Mrs. Wall.
Mrs. Wall died on February 8th, 1938, intestate, and upon the verified petition of Mr. Wall and with due notice to all persons in interest, general letters of administration of the estate of Marie Louise Wall were duly issued to her husband, John M. Wall, by the Surrogate's Court of the County and State of New York. Mr. Wall never filed an account of his administration of his wife's estate. He died on January 25th, 1941, also intestate, and letters of administration of his estate have been granted to the defendant by the surrogate of Somerset County, New Jersey. The complainant was thereafter duly appointed administrator de bonisnon of the estate of Marie Louise Wall by the Surrogate's Court of the County and State of New York.
Mrs. Wall was also survived by a sister, brothers, nephews and nieces, who under the provisions of the law of New York relative to the distribution of a personal estate of an intestate of such alleged dimensions, would have a beneficial interest.
This precursory sketch of events facilitates a perception of the factual field in which the present litigation is pursued. The complainant, as administrator of the estate of Marie, now constrains the administrator of John's estate to account for the moneys alleged to belong to the estate of Marie.
The initial point of resistance proposed by the defendant is that although Mrs. Wall was actually residing in the State of New York at and for some time prior to her death, nevertheless her domicile was in New Jersey, in which event, it is said, the complainant is without authority to prosecute this cause and the next of kin of Mrs. Wall have no beneficial interest in the funds sought to be captured. This point was naturally encountered during the progress of the final hearing upon the offer of the defendant to introduce supporting evidence. I then, in view of the adjudications of the Surrogate's Court of the County and State of New York relative *Page 586 
to the appointments of the complainant and his predecessor, announced my ruling orally, and it will be expeditious to now extract it from the stenographic transcript:
"In view of the circumstances I may say that it is my present conclusion that the domicile of the decedent, Mrs. Wall, cannot be a controversial issue in this cause. If the purpose of the introduction of the evidence is to disclose that the domicile of Mrs. Wall was, in fact, in New Jersey, in order to collaterally attack the validity of the letters of general administration issued by the Surrogate's Court of the State of New York, to the complainant, such evidence I believe to be inadmissible. I have in mind our decisions.
"The decedent, John M. Wall, whom the defendant here represents, applied for letters of general administration for the estate of his wife, to the Surrogate's Court of New York, representing in the application that she was a resident of New York. As I understand it, all the parties in interest had notice of this application for letters, and were made parties to the proceeding.
"The principle, I think, is well established, that in the absence of fraud, a judgment of a court of general jurisdiction cannot be collaterally impeached if the court had jurisdiction of the subject-matter and the parties. Jurisdiction in this sense is the power to hear and determine the cause. In the exercise of the power to hear and determine, the court will necessarily inquire to ascertain certain basic facts on which its jurisdiction to proceed necessarily depends. The determination of such matters by the court is conclusive. In the effort to attack the judgment in a collateral manner, if such facts on which such jurisdiction depends are not in the record, they will be presumed. I am speaking, of course, of courts of general jurisdiction, to which class, under the proof, the Surrogate's Court of New York belongs.
"The New York court, having jurisdiction of the subject-matter and the parties, was required, in the exercise of that jurisdiction, to hear and determine the fact of the decedent's domicile, it seems to me, in order to determine whether general or ancillary letters should be issued to the petitioner, John Wall, at the time of his application. *Page 587 
"The court of New York issued letters of general administration, first to the decedent's husband, John Wall, and then to this present complainant. The determination of that issue by the Surrogate's Court of New York, in so far as the parties to that proceeding are concerned, and those in privity with them, precludes, I think, any further dispute between them on that issue. The defendant, as administrator, is surely in privity with the decedent, whose interest he represents. I am confident that the validity of the order upon which the administrator de bonisnon in that estate was appointed can only be challenged in a direct manner, either by an appeal, or whatever the proper practice may be in the State of New York.
"Although a second suit is instituted between the same parties involving the subject-matter related to that involved in the preceding suit, and that same matter essential to the second suit was in issue and determined in the preceding suit, estoppel by judgment ordinarily becomes effective.
"I don't understand that I am concerned in this case with the distribution of the assets of the estate of Mrs. Wall. Fundamentally, as I see the present case, the complainant seeks a discovery and accounting from the defendant of the moneys and assets in the hands of the defendant, of which the decedent Marie Louise Wall was the lawful owner, and to which it is claimed the representative of her estate is entitled. I may add that it is also elementary that the title to personal property of an intestate vests in her administrator and not immediately in her next of kin, so I conceive it to be the task of the court in the present case to determine what moneys, if any, of the estate of John Wall, as such, should justly be a part of the assets of the estate of his wife, Marie Louise Wall. Whether the moneys found to belong to the estate of Mrs. Wall, for example, should be paid to the complainant or a representative of her estate who shall have taken out ancillary letters, does not justify the taking of evidence at this hearing concerning the domicile of Mrs. Wall.
"I desire to emphasize that there is no party in the present case who was not in privity or a party to the proceeding in the Surrogate's Court in New York. Nor is this a case in *Page 588 
which any application for domiciliary letters of administration of the estate of Mrs. Wall is made, which might occasion, of course, an inquiry into her true domicile. Therefore, it is my conclusion that the domicile of Mrs. Wall is not a subject to be properly litigated in this case. Such is the ruling."
The following citations may now be added: Quidort'sAdministrator v. Pergeaux, 18 N.J. Eq. 472; Ryno's Executor v.Ryno's Administrator, 27 N.J. Eq. 522; In re Queen, 82 N.J. Eq. 583; 89 Atl. Rep. 290; Plume v. Howard Savings Institution,46 N.J. Law 211; Ordinary v. Webb, 112 N.J. Law 395;170 Atl. Rep. 672; Charles Wiener Sons, Inc., v. Fischer, 118 N.J. Eq. 387;179 Atl. Rep. 632.
In other features, the cause evinces a conspicuous resemblance to that of Steinmetz v. Steinmetz, 130 N.J. Eq. 176;21 Atl. Rep. 2d 743. The decision in that case in its applicable range must govern my conclusions.
Mr. and Mrs. Wall are now deceased. No inkling of the original contributions to the creation of the joint accounts can be enticed from them. True, Mrs. Wall received a relatively substantial income from a trust established for her by her grandfather. True also, is the assertion that the pursuit of any remunerative vocation by Mr. Wall in recent years can only be inferred from evidence of a very nebulous substance. It may be surmised that between November, 1928, and May, 1936, at least $10,000 of the income of Mrs. Wall entered the joint accounts. On March 1st, 1939, Mr. Wall deposited $10,000 in cash to his individual account in the First National Bank of Bound Brook. Perhaps this treasure was the accumulated income of Mrs. Wall or the hoard of Mr. Wall or the savings of both.
The complainant insists that since there is no credible and persuasive evidence that Mr. Wall received any pecuniary earnings or income with which to make any contributions to the joint accounts or to enable him to accumulate any substantial savings in cash, the proceeds of the joint accounts and also the cash deposit of $10,000 should be decreed to be due to the estate of Marie Louise Wall. Conjectures are not acceptable as alternatives of competent and credible proof. *Page 589 
The defendant has averred that Mr. Wall, having survived his wife, thereupon became entitled to all of the proceeds of the designated joint accounts. Neither proposition is alluring. It has been resolved in this court that the destruction of the joint tenancy eradicates the pre-existing beneficial right incident to survivorship. John, by his arbitrary act in withdrawing all the funds from the joint accounts following the mental incompetency and during the lifetime of his wife, and the commingling of her funds with his own and his personal dominion over all as the sole owner thereof, demolished the unities essential to a joint tenancy, defeated his survivorship rights, and he thereupon became by operation of law a tenant in common with his wife of the credits then due them from the banks. Steinmetz v.Steinmetz, supra; Dover Trust Co. v. Brooks, 111 N.J. Eq. 40;160 Atl. Rep. 890.
In the instant case, the sources of the money with which the joint accounts were originally established and the actual contributor of numerous deposits subsequently made to the credit of these accounts, have not, and perhaps cannot now, be confidently traced and identified with decisive assurance. The contractual nature of the accounts, whether created by Mr. Wall or by Mrs. Wall, or by both, with the banks (as may have been the event), evidences at least in a prima facie degree the intention that Mr. and Mrs. Wall, during the lives of both, should have the proprietary rights therein of joint tenants and inferentially in equal shares, because incongruous realities of ownership are not otherwise revealed with sufficient completeness and definiteness. Cf. Aubry v. Schneider, 69 N.J. Eq. 629;60 Atl. Rep. 929; affirmed, 70 N.J. Eq. 809; 67 Atl. Rep. 1102.
While it is evident that John took possession of all of the funds and incurred obligations of a fiduciary nature in respect of those belonging to his wife and later to her estate, yet it is also apparent that he did not dissipate them. They now remain available. He may have supposed that he was acting lawfully and properly as the duly appointed committee of his wife's property and subsequently as the administrator and beneficiary of her estate. To tarnish his conduct as *Page 590 
willfully fraudulent and to visit upon his representative in this proceeding the rigorous rules applicable to the situation of a fraudulent fiduciary, seem unwarranted.
A condensed exposition of the joint accounts at the time they were closed may be composed as follows:
 First National Bank .................. $26,743.18
 Bound Brook Trust Company ............ 15,903.37
 West Side Savings Bank ............... 7.92
 __________
 Total .......................... $42,654.47

Equitable considerations constrain me to determine that one-half of these joint bank accounts was the property of Mrs. Wall at the time of their termination by her husband.
The balance of $1,051.29 exhibited by the account of John as committee of his wife's property, plus the item of $974.82 subsequently received by him, should in the absence of evidence of legitimate deductible disbursements, be also decreed to be assets of the estate of Mrs. Wall. The deposit made by John on March 1st, 1939, to his credit in the First National Bank cannot, under the meager evidence adduced concerning it, now be adjudged to have been the money of Mrs. Wall, and therefore it will not be allocated to her estate.
While it is not implicit that Mr. Wall sought deliberately to defraud his wife or her estate, yet it would be inequitable to permit his estate to profit by his breach of trust. Broadly stated, interest has been allowed by the courts of our state either by way of damages for the detention of a fund, or by way of profit earned or advantage attained. In the absence of a definitely controlling precedent, courts of equity are free to decide all questions pertaining to the allowance of interest according to the "plainest and simplest considerations of justice and fair dealing" in the given case. Agnew Co. v. PatersonBoard of Education, 83 N.J. Eq. 49, 67; 89 Atl. Rep. 1046;affirmed, Id., 336, 339; 90 Atl. Rep. 1135; Hoover Steel BallCo. v. Schaefer Ball Bearing Co., 90 N.J. Eq. 515;107 Atl. Rep. 425; Brown v. Home Development Co., 129 N.J. Eq. 172;18 Atl. Rep. 2d 742. The accrued interest from the date of withdrawal was allowed in Reeves v. Reeves, 102 N.J. Eq. 436;141 Atl. Rep. 175. *Page 591 
It is therefore resolved that the estate of Mrs. Wall is entitled to the interest which has actually accrued upon that portion of the funds herein determined to belong to her estate, calculated upon the one-half share of the joint accounts from the dates of their respective terminations by Mr. Wall and upon the two other items aggregating $2,026.11 from the date of their receipt and deposit by Mr. Wall.
Unless there is a reasonable apprehension of some inaccuracy in the figures which are taken from the evidence and exhibits introduced at the final hearing, a reference to a master is unnecessary.
In composing the decree to effectuate the conclusions expressed, counsel will be heard concerning the incidental subjects to which some reference has been made in their briefs.