Complainant and defendant entered into a marriage ceremony on August 14th, 1938, and lived together thereafter until March 6th, 1941. After the separation defendant filed a petition for annulment against complainant and such proceedings were had thereunder that on February 16th, 1942, a decree was entered by the Chancellor against complainant adjudging that the marriage aforesaid "is a nullity, and should and shall be deemed in all courts of law and equity and in all places to have been and to be null and void; and that the said petitioner and defendant are now each, so far as said ceremony of marriage might affect them, unmarried." The basis of the decree was a finding by this court "that at the time of said marriage defendant was physically and incurably *Page 492 
impotent, and that petitioner was ignorant of said impotence or incapacity at the time of said marriage."
The present bill, filed on April 28th, 1942, seeks that a conveyance made through an intermediary from the present complainant to the present defendant may be declared "null and void and of no effect," and for a reconveyance of said property to complainant by defendant, and further, that defendant account for certain goods and chattels enumerated in the bill and return them to complainant, including an engagement ring and a wedding ring.
The allegation of the bill upon which relief is predicated as to the conveyance aforesaid is two-fold, first, that the deed was executed upon a trust or promise on the part of the defendant to reconvey at the request of complainant and, secondly, "at the time complainant conveyed the premises herein described to defendant, he had no other income or assets from which he could derive an income, nor did he have any means of support and by reason of said conveyance to his wife, complainant deprived himself of all his property and thereby impoverished himself, which condition has continued to exist from said time to the present and complainant is now destitute."
As to the alleged trust, it will be noticed that the bill does not attempt to set up the nature thereof, i.e., no allegation of fact with reference thereto is made. The bill simply concludes that the conveyance was "in trust for complainant."
The deed on its face is an absolute conveyance, without reference to any trust or trusts incorporated therein. At the final hearing, although complainant was permitted to testify that defendant promised to reconvey on demand, his testimony was met by defendant's explicit denial and failed to convince that the conveyance was other than what it purported to be, a deed conveying a fee absolute. I do not, therefore, pass on whether or not, under the circumstances of this case, parol evidence was admissible to vary the conveyance, but rest my decision solely on the answer to the question as to whether the conveyance should be set aside on the second ground, i.e., a divestiture by the husband of his entire estate in the conveyance to his spouse. *Page 493 
The evidence entirely satisfies me that complainant did, by the conveyance, divest himself of his entire estate. True, he still retained his commission as an attorney-at-law, but the evidence justifies the conclusion that he was incompetent to turn that asset to profitable use. He did not, during his married life, earn sufficient moneys to maintain the household and has not, since the separation, been able to support himself. True, about three months before the marriage he had succeeded in getting in one sizeable monetary return from his law practice, but never before or since. With this fee he bought the property in question and within less than one and one-half years he was compelled to place a mortgage thereon for $1,700 in order to pay taxes and the expenses of the loan, which left him only $700 for living expenses. This testimony is not denied by the defendant but, on the contrary, is corroborated.
The rule of law governing this set of facts seems to be well established. The rule as stated by 2 Story Eq. Jur. § 1374, is as follows:
"Thus, for example, if a husband should, by deed, grant all
his estate or property to his wife, the deed would be held inoperative in equity, as it would be in law, for it could in no just sense be deemed a reasonable provision for her (which is all that courts of equity hold the wife entitled to), and in giving her the whole he would surrender all his own interests."
The foregoing rule was referred to by the Court of Errors and Appeals in Fretz v. Roth, 70 N.J. Eq. 764; 64 Atl. Rep. 152,
and while the court in that case found as a fact that the conveyance then under consideration "constituted but a portion in value of the husband's entire property," the rule was approved. Subsequently, in Sanford v. Sanford, 101 N.J. Eq. 485;138 Atl. Rep. 707, Vice-Chancellor Church cited the Fretz Case
with approval and calls attention to the fact that that case "has been cited in subsequent decisions by our courts twelve times — ten times in this court and once in the Court of Errors and Appeals, and once in the Prerogative Court. On none of these cases is the principle above stated criticised, modified or set aside." The Vice-Chancellor then *Page 494 
reviewed the equity cases cited by Mr. Justice Story in support of the principle, as well as supporting authorities of this and other jurisdictions and text writers, and concludes, as I do, "that the equitable principle of Justice Story * * * is still in force in this state." The latest case citing this principle isSelser v. Jester, 131 N.J. Eq. 57; 23 Atl. Rep. 2d 602, in which Vice-Chancellor Woodruff quotes the Fretz Case as well as Sanford v. Sanford.
Defendant also relies on Fretz v. Roth, supra, and quotes:
"Without proof of incapacity, fraud or undue influence, a deed which appears to have been executed under all the safeguards provided by law for the protection of the grantor against coercion and imposition, though supported by no consideration but love and affection, is entitled to stand on its own inherent strength," and to the further effect that "the law permits anyone to dispose of his property gratuitously, if he pleases, provided the rights of creditors are not injuriously affected thereby." But he overlooks the fact that the Court of Errors and Appeals held in the Fretz Case, as heretofore noted, that the conveyance under discussion was "but a portion in value of the husband's entire property." Defendant also relies on Wegmann v.Bacon, 97 N.J. Eq. 193; 127 Atl. Rep. 98; McGee v. McGee,81 N.J. Eq. 190; 86 Atl. Rep. 406, and other cases of like character, all of which deal with conveyances of less than the whole of grantor's estate.
It is argued that the true reason complainant conveyed to the defendant was to protect himself against the threat of a possible suit against him. It is true that the evidence justifies a finding that a claim that the husband was liable to the extent of approximately $400 was being urged against him at about the time of the conveyance. But the evidence, taken as a whole, does not justify a finding that it was to avoid the consequences of this claim that the conveyance was made. No suit was ever brought on the claim and complainant's denial that he was attempting to circumvent this creditor by the conveyance, together with the circumstances attending the conveyance, plus the absence of any testimony to the contrary on the part of the wife, suffices to overcome the *Page 495 
inference of a conveyance to defraud creditors, as alleged by the defendant.
The evidence satisfies me that the household goods were, in the main, if not all, purchased either before the marriage or shortly thereafter, and that payment therefor was, in the main, from funds in a bank account standing in the name of the husband. There is no evidence that the wife purchased any of these household goods from funds in her sole possession. The proofs show that these household goods, were selected mostly by both husband and wife on shopping trips at or about the time of the marriage and paid for out of the aforesaid bank account. The funds in the husband's bank account out of which the household goods were paid for were made up, according to the evidence, by $200 given by the wife to the husband and deposited by him in said account; $700 was given to the husband by either the wife's father or mother and likewise deposited in the bank account. There was about $300 in wedding gifts from the relatives of both spouses. The cost of the household goods was approximately $1,200. There is no doubt that the $700 and the $200 above referred to were given to the husband for the purpose of furnishing the home to be occupied by him and his wife, and I think the same may be said of the $300 item, excepting that some of the moneys may not have been given for the specified purpose of buying household furnishings. However this may be, it seems unquestionable that all these funds in the husband's bank account constituted gifts to both complainant and defendant jointly and not to either of them to the exclusion of the other. The husband says that the $700 was given as a dowry and by Jewish custom the money became his. The weight of the testimony is that it was not given as a dowry but as a gift, as heretofore set forth, and there is no proof of any custom other than the general statement of complainant that there was one. We have, then, approximately $1,200 in household goods bought, in the main, with money given by relatives for that purpose. The defendant does not testify that any of these moneys were given to her as her absolute property, but she says that she took the household goods from the home and considers them as belonging to her *Page 496 
because she picked them out at the time of the purchase, and from the further fact that she contributed $200 toward the purchase price and that $700 came from her mother or father. She does not testify that anyone ever gave her, for her separate estate, either the household goods or the moneys which went into their purchase. Under these circumstances, the finding is justified that these household goods were community property, intended for the joint enjoyment of the husband and wife, and that they were tenants in common thereof. Flemming v. Iuliano, 92 N.J. Eq. 685; 114 Atl. Rep. 786, citing Aubry v. Schneider, 69 N.J. Eq. 629; 60 Atl. Rep. 929. There is some claim that the $200 given by the wife to the husband, and at least a part of the other moneys making up the $1,200 were used for the necessities of living, but complainant's production of bills and receipts for household goods and other purchases demonstrates to the contrary of this contention.
As to the engagement ring, complainant is clearly not entitled to the return thereof. Farrow v. Farrow, 72 N.J. Eq. 421;65 Atl. Rep. 1009; Spingarn v. Spingarn, 8 N.J. Mis. R. 423. And the same reasoning which denies the complainant the engagement ring results in a refusal to award him a return of the wedding ring. The gift of the engagement ring was absolute and the wife not only became engaged but she went through the marriage ceremony. The wedding ring was given as a token of that marriage and while it is true that the marriage was thereafter annulled, that result was brought about solely by the complainant and through no fault on the part of the wife.
The decree should provide for a reconveyance of the real estate described in the bill, and if the parties are unable to agree on the amount representing their respective interests as tenants in common in the household goods, a reference to a master to so ascertain may be had. The complainant will be decreed to have a money decree against defendant for the value of his interest in said household goods, giving credit for the value of such of them as he has retained in his possession. *Page 497