EAST RUTHERFORD BUILDING AND LOAN ASSOCIATION, appellant-respondent,

*v.*

MARGARET STEWART McKENZIE et al., appellants-respondents.

[Submitted November Term, 1916.   Decided March 5th, 1917.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell, who filed the following opinion:

"This suit was brought by the East Rutherford Savings, Loan and Building Association against Margaret Stewart McKenzie, the widow, and Henry M. Ladd, the executor of the will of William McKenzie, deceased, for the purpose of determining the title to some shares of stock of the complainant corporation which were claimed by both the widow and the executor. What is claimed to be the evidence of the ownership of the shares is on deposit with the clerk of this court and consists of certificates of shares of stock and a pass book in which the account between the corporation and the shareholder were kept. A decree of interpleader has passed and the contending parties have filed their

claims; and the cause now comes on for hearing and a settlement of the title to the shares in question.

"The facts are these: On May 12th, 1913, and for a long time prior thereto, William McKenzie, the decedent, owned two hundred shares of full-paid stock of the complainant corporation, the par value thereof being $100 per share, and Mrs. McKenzie owned sixty shares thereof, for which certificates had been issued to them, respectively, by the corporation and the shares stood in their names, respectively, on its books. At the same time Mr. McKenzie was the owner of five hundred shares of the same stock, which were not fully paid up. These shares were represented by a pass book numbered 156, in which was kept an account of all the deposits and withdrawals and exhibiting the balance to the credit of the shares on the company's books. There had been paid on account of these shares something over $48,-000. In addition thereto, Mrs. McKenzie owned one hundred shares of the stock of the corporation which were redeemed by the corporation during the lifetime of Mr. McKenzie, so that this block of stock is not in controversy. Since the beginning of the suit the sixty shares of full-paid stock owned by Mrs. McKenzie have been surrendered and released to her by the executor, so that there remains in controversy two hundred shares of the full-paid stock and five hundred shares of the installment stock having an aggregate value of about $75,000. On the date last mentioned, May 12th, 1913, Mr. and Mrs. McKenzie severally surrendered to the corporation all the said certificates and the pass book No. 156, and at the same time made application for new certificates and a new pass book by signing their names to cards prepared by the corporation for the purpose. The cards so deposited with the pass book No. 156 read as follows:

" 'Date. May 12, 1913. Book No. 156. I hereby make application for 500 installment shares in the East Rutherford Savings, Loan and Building. Association, and agree to abide by its constitution, copy of which I have received. Signature. Wm. McKenzie. Residence. Carlton Hill, N. J. Married. Wife's name, Margaret Stewart McKenzie.'

"The form of application for the other block of the shares was in the same form, the only changes being made necessary by the slightly varying subject-matter. On the reverse side of each of

the said cards was endorsed a statement of which the following is a copy: 'The shares in our joint names are payable to either, or both, and to the survivor on the death of the other. Wm. McKenzie. Margaret Stewart McKenzie.' At the time the new certificates for the shares were issued, Mr. McKenzie gave directions that they should be issued as follows: The new certificates to Mrs. McKenzie were issued to 'Margaret Stewart and/or William McKenzie,' and the certificates which were issued to take the place of the ones that had been surrendered by Mr. McKenzie were issued to 'William and/or Margaret Stewart McKenzie.' The proper entries were made on the books of the corporation to effectuate the purposes of the surrender of the old evidences of ownership and the issue of the new ones. All this took place on May 12th, 1913, and when the transaction was finished Mr. McKenzie went from the office of the complainant corporation having in his possession all the certificates and the pass book, representing two hundred shares of the full paid stock and five hundred shares of the installment stock of the said corporation. We now lose sight of the certificates and pass book in question until June 2d, 1913. In the year 1907, long prior to any controversy over this property, Mr. and Mrs. McKenzie rented a safe deposit box at the store of Tiffany & Company, in New York, in the names of both. A year or so later the lock on the original box became out of order and another box numbered 630 was substituted. There was delivered at that time to Mrs. McKenzie two large keys for the outside door of the safe deposit box and two small keys for the interior tin box. It appears by the records of Tiffany & Company that no one ever claimed or had access to this box (to either the original or the substituted box) except Mrs. McKenzie. She kept it as her individual personal property, and, as I understand the evidence, only her property was ever placed in that box. She continued to rent the box in question from that time until after the beginning of this suit, and she says that the certificates for the two hundred shares having come into her possession she deposited them in the Tiffany box on June 2d, 1913, and that they remained there until they were taken out by her to be deposited with the clerk of this court under an order made in this cause

for that purpose. This is the complete history of the custody of the shares, so far as is disclosed by the evidence, with the single exception that according to the evidence of Miss Guy, on June 1st, 1913, Mrs. McKenzie went out of the room where she and Mr. McKenzie and Miss Guy were engaged in conversation about building and loan shares, and almost immediately returned and put something in Miss Guy's hand and closed it over and said, 'How do you feel having $26,000 in your hand?' There was considerable discussion over the admissibility of this evidence, but it was finally admitted, and while there is no direct evidence that it was the certificates for the shares that were put in Miss Guy's hands, still, it is stated by Mrs. McKenzie, that what she had in her hand was the shares, whence comes the argument that on that day she had the certificates for the shares in her possession. The evidence was clearly admissible.

"The history of the pass book which represented the five hundred shares of installment stock is somewhat different. Mrs. McKenzie says that that pass book came into her possession and that she kept it from May 12th, 1913, down until within a few days of Mr. McKenzie's death in a drawer in a chiffonier in her bedroom under lock and key; and that a few days before Mr. McKenzie's death the drawer containing the pass book was surreptitiously opened and the pass book removed therefrom, together with the large key fitting into the lock of the outer door of the Tiffany safe deposit box. When she discovered it she instituted a search and found the small key to the inside box on the floor of the room in which the chiffonier was; the large key and the pass book were found in Mr. McKenzie's safe at the mill when the safe was opened after his death.

"Mrs. McKenzie insists that the surrender of the old certificates and pass book to the complainant corporation, and the issue of the new certificate and the new pass book in the joint names of the husband and wife with the formula contained on the reverse side of the application cards, amounts to, and is, a consummated gift, and a settlement of the property on her to the extent of a joint ownership with the right of survivorship, and that upon the death of her husband she takes as survivor.

"The law governing the case has been illustrated by so many cases in this state and is so well understood that it is unnecessary to cite authorities. There must be a donative intention, a delivery of the gift, or what amounts to a delivery, and the donor must rid himself of all control over the subject-matter. There can hardly be any doubt but that Mr. McKenzie intended to place the property in the joint names of himself and his wife; he was a man of large business affairs, and was at the time conducting successfully a large business in this state; he was president of the building and loan association with whose shares he was dealing; he was evidently a man of strong will, large experience, and he, undoubtedly, knew what he was doing when he caused the old certificates and the old pass book to be surrendered and new ones issued in the joint names of himself and his wife. So far as appears, he intended this to be a permanent disposition of the property, because nowhere in the evidence is there any intimation that it was done for a temporary purpose. On the contrary, according to the testimony of Mrs. Butland, he seems to have transferred the property to his wife permanently. I think there likewise was a delivery of the subject-matter of the gift within the requirements of the law on the subject. I find no authorities defining what is requisite for a delivery in the case of shares issued to joint tenants. Neither has the diligence of counsel been otherwise rewarded, and I suppose, therefore, we are remitted to the rule that the delivery must be such as the subject-matter of the gift is most capable of. A delivery to one of two joint tenants must, in the nature of things, be a delivery to both. This would, undoubtedly, be true of tenants in common, where it is the undoubted rule that the possession of one is the possession of all. That is, undoubtedly, the rule with respect to real estate. *Foulke* v. *Bond, 41 N. J. Law 527*, and other things being equal, the same rule would apply to personal property. According to the testimony of Mrs. McKenzie the certificates of stock and the book came into her possession some time between May 12th and June 1st, 1913. The fourth section of the Evidence act precluded her from stating that possession came to her from her husband, and, therefore, we must say that it does not appear how the property got into

her possession. I do not think that the court can assume that it came into her possession unlawfully; it would preferably infer that the husband intended to make a settlement upon her and that she came into possession of the property in pursuance of that arrangement and in a lawful manner. It was supposed by counsel for the executor at the argument that the certificates and the pass book did not come into Mrs. McKenzie's possession until a few days prior to his death, when she sent the witness Widows to the mill for money and for the brown envelope, which she says contained only Mr. McKenzie's will. But this supposition on the part of the executor is a mere supposition; there are no facts whatever to support it, nor any set of circumstances from which corroboration can be obtained. I am, therefore, constrained to reject the argument so made upon the ground that it appears to me to have no foundation in fact.

"The two objections to Mrs. McKenzie's claim urged by the executor are (1) that the transaction amounted to a testamentary disposition of the property and was void because it was not made in accordance with the requirements of the statute of wills, and (2) that if the act which was performed by Mr. McKenzie was intended as a gift *inter vivos*, it failed because he retained the actual physical possession of the evidences of the subject-matter of the gift, to wit, the certificate and the pass book. I think the first objection is without substantial foundation. The argument against the executor's position is this: The testamentary disposition of property is one which is intended to take effect at or after the death of the testator. If a vested interest is created in his lifetime that vested interest is valid, notwithstanding the will and all the requirements of law touching the testamentary disposition of property. The only valid objection to gifts, or attempted gifts, upon the ground of lack of testamentary form, lies in the fact that the interest dealt with is an interest which does not vest until after the death of the testator. Here, if any interest passed to Mrs. McKenzie by virtue of the transaction appearing in the evidence, it passed on May 12th, 1913, nearly a year before the death of Mr. McKenzie, and not until that event did her full right accrue. It is the ordinary case of the present vesting of an interest to be enjoyed at some time

in the future. The second objection, viz., the lack of delivery, has already been dealt with; but there remains to be added a word on the point of the donor's renunciation of all control over the property. It is undoubtedly true that the changing of the title to the shares from individual ownership to joint ownership effected no change whatever in the manner in which the parties to the transaction dealt with the shares. Mr. McKenzie remained president of the building and loan association, and to all outward appearances there was no change. Even supposing that there had been no actual physical delivery of the evidences of the property to Mrs. McKenzie, Mr. McKenzie as joint tenant with the right of survivorship had such an interest in his right of survivorship as permitted him to hold and manage the joint property to the best advantage of all concerned.

"I am, therefore, of opinion that by virtue of the transaction above recited the title to the said shares and pass book, and the fund represented by them, vested in Mr. and Mrs. McKenzie as joint tenants on May 12th, 1913, and that upon the death of Mr. McKenzie, Mrs. McKenzie became entitled to the property by the right of survivorship, and I will advise a decree to that effect. The decree will be made, without costs."

*Messrs. Lindabury, Depue & Faulks,* for the complainant.

*Messrs. Collins & Corbin,* for the defendants.

Per Curiam.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Howell.

*For affirmance*—The Chief-Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Gardner—12.

*For reversal*—None.