Complainant, executor and trustee under the wills of Frank and Rose Rosatto, seeks instructions from the court as well as a construction of the third paragraph of the will of Rose Rosatto. *Page 608 
Frank and Rose Rosatto were husband and wife, the former having died on March 12th, 1936, and the latter on May 24th, 1938.
At and prior to the death of Frank, he and his wife held personal property as follows:
Fifty income shares of the Islanders Building and Loan Association of Atlantic City, New Jersey, represented by Certificate 2076, registered in the names of Rose Rosatto and Frank Rosatto;
Installment share account No. 7209 of the Atlantic Coast Building and Loan Association of New Jersey, registered in the names of Frank or Rose Rosatto;
Coast Realty Trust Participation Certificate No. A1402 denoting a 4481/1,658,462 participatory interest in said trust, registered in the names of Frank or Rose Rosatto;
78 and 2674/3000ths shares of preferred stock of the Guarantee Trust Company, of Atlantic City, New Jersey, representing restricted balance of $2,366.74, registered in the names of Frank or Rose Rosatto;
$4,000 bond and mortgage, dated October 11th, 1929, due October 11th, 1932, made by Nathan Rudin on 4760 North Ninth street, Philadelphia, Pennsylvania, in the names of Frank and Rose Rosatto; and
$3,400 bond and mortgage dated April 28th, 1921, made by Israel Zeff, on 4030 Germantown avenue, Philadelphia, Pennsylvania, held by Frank and Rose Rosatto.
Complainant asks that this court determine what interest the respective parties have in the personalty aforesaid in order that he may determine to whom distribution shall be made.
The first question asked by complainant is: Did Rose Rosatto take the two mortgages, items 5 and 6, upon the death of her husband? and inasmuch as counsel for all parties agree that Rose did take, such will be the decree.
The second question is: Did Frank and Rose hold the first three items (building and loan shares) as joint tenants or as tenants in common?
It will be observed that all of the stock mentioned in items 1 and 2 consisted of building and loan shares standing in the *Page 609 
name of husband and wife, and the same is true of item 3, as it represents building and loan shares converted into a trust participating certificate on a reorganization of the building and loan association, the certificate being in an amount representing the participation to which the building and loan shares formerly held by Frank and Rose were entitled.
Unlike the case of East Rutherford Savings Loan and BuildingAssociation v. McKenzie, 87 N.J. Eq. 375; 100 Atl. Rep. 931,
there is absolutely no evidence before me to show any transaction between husband and wife leading up to the issuance of the income shares, nor as to the installment share account, nor as to the participation account. It does not appear whose money went into any of these investments nor who had possession of the evidence of these investments, i.e., the full-paid share certificate, the deposit book or the participation certificate, other than that they were found in a safe in the home of decedents after the death of the husband and continued therein until the death of the wife; nothing to show a donative intent from one to the other, or delivery of the shares to one or the other, or which one of the spouses, if either, had exclusive control of the contents of the safe, or whether both had. In other words, all the essentials of a gift inter vivos are lacking.
Reliance is placed on chapter 65, P.L. 1925 p. 212 § 51, which provides:
"When shares shall have heretofore been issued or shall hereafter be issued by any such association, in the name of husband and wife, and one of them shall die, or to two persons as joint owners and one of them shall die, the amount due thereon, with all earnings, profits or interest shall be the property of the survivor and shall be paid by such association to the survivor, and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to such association for any payment so made."
Vice-Chancellor Berry in Zimmerman v. Nauhauser, 119 N.J. Eq. 424; 183 Atl. Rep. 820, had occasion to consider a similar statute, to wit, an act concerning building and loan associations, providing that: *Page 610 
"Whenever any shares in any such association shall have heretofore been issued or shall hereafter be issued to any person in trust for another * * * the trust shall be presumed to have been created by act of the trustee alone and in the event of the death of the trustee, the amount due on said shares, or any part thereof, * * * shall be the sole property of the person for whose benefit the shares were issued," c. (Revision of 1925 p. 133.)
He held that such a transaction constitutes neither a valid gift nor a declaration of trust and said (at p. 425):
"The legal requirements of a voluntary declaration of trust are the same as those of a gift inter vivos," citing cases.
He then cites and quotes the statute above referred to as it then appeared, and (at p. 426) said:
"Similar legislation relating to bank accounts opened in the name of one in trust for another have been held ineffectual to accomplish either a gift inter vivos or by will, where proof of the necessary elements for such gifts, aside from the statute itself, was not produced," citing cases.
The act under consideration in the instant case, it seems to me, fails to accomplish its purpose in creating a joint tenancy in husband and wife unless the existence of the necessary elements to constitute a gift inter vivos as between them is proved. Surely the legislature, in an act entitled "An act concerning building and loan associations," could not change the common law rights as between the holders of the shares themselves, and in this connection it may be noted that this objectionable feature of the act has been eliminated by amendmentR.S. 17:12-52.
It would seem to be unnecessary to further pursue this question, were it not for the decision of Vice-Chancellor Lewis in Imparato v. Luscardi, 123 N.J. Eq. 298; 197 Atl. Rep. 379,
he having decided that the evidence before him justified the finding that there had been a gift inter vivos and said:
"By statute laws of 1925, chapter 65, section 51 and by the by-laws of the association, this right of survivorship is expressly given."
He so decided because the necessary elements for a gift intervivos had been proved, but I think would not have so *Page 611 
decided if "proof of the necessary elements for such gifts, aside from the statute itself, was not produced." Zimmerman v.Nauhauser, supra.
To the same effect, but relating to bank accounts, seeJefferson Trust Co. v. Hoboken Trust Co., 107 N.J. Eq. 310;152 Atl. Rep. 374.
My conclusion is that Mr. and Mrs. Rosatto held the first three items as tenants in common, there being no proof or facts upon which a joint tenancy may be predicated. Citation of cases under this holding will be found in the discussion of item four, hereinafter referred to.
The next item, No. 4, consisting of preferred stock on the Guarantee Trust Company, stands on a different footing. The signature card under which the original deposits were made shows the account as follows:
 Frank Rosatto | either sig. Rose Rosatto |
There is no testimony as to the manner in which this account was created and nothing to justify a finding of a gift intervivos, and the case of Hahn v. Ironbound Trust Co., 94 N.J. Eq. 123; 118 Atl. Rep. 744, relied upon by complainant, is not in point. In that case the signature card had written on it:
"funds payable to either or the survivor * * * such moneys are to be drawn * * * by either of us, or in the event of death of either to belong to the survivor * * * the balance at the death of either to belong to the survivor."
The result is that the only evidence before me touching this preferred stock is that there was a bank account standing in the name of husband and wife upon which either had a right to draw, but nothing to show any right of survivorship in either, and at the same time, nothing to show the respective interests of the two parties therein. Inasmuch as the law does not favor joint tenancy, the interest of the parties was that of tenants in common, and in the absence of a showing of the respective interests in the deposit, the presumption is that the interests were equal. See Aubry v. Schneider, 69 N.J. Eq. 629;60 Atl. Rep. 929, and in general, cases holding that *Page 612 
there is no tenancy by the entirety in personal property, and when title to personal property is placed in husband and wife without words which will create a joint tenancy, they hold in common. Franklin National Bank v. Freile, 116 N.J. Eq. 278;173 Atl. Rep. 93; Central Trust Co. v. Street, 95 N.J. Eq. 278;127 Atl. Rep. 82; Oppenheimer v. Schultz, 107 N.J. Eq. 192;152 Atl. Rep. 323; Flemming v. Iuliano, 92 N.J. Eq. 685;114 Atl. Rep. 786.
The next question is the proper construction of paragraph 3 of the will of Rose Rosatto, which is as follows:
"I give, devise and bequeath unto my grandnephew, J. Robert Conroy, all my stock in the Islanders Building and Loan Association, including both the full paid and the running shares, the par value of which at the time of the execution of this will is in excess of $10,000.00. If at the time of my decease the par value of my holdings in said building and loan association be less than $10,000.00, then, in that event, I give, devise and bequeath unto J. Robert Conroy, in addition to the aforesaid building and loan association stock, a sum equal to the difference between the par value of my building and loan association stock, herein mentioned, to-wit, the Islanders Building and Loan Association, and $10,000.00. Nothing shall be considered as an advancement on this legacy."
The evident intention of testatrix was to specifically bequeath to her grandnephew her building and loan shares which, at the time of the execution of her will, were deemed to be of a value in excess of $10,000, and she further evinced the desire that the nephew should be paid out of her estate any difference between the value of the shares and $10,000 in cash. In speaking of value, however, she referred to "par value."
Generally speaking, of course, the value of building and loan stock or shares is not referred to as par value. It may and does now have a market value, but prior to the time of liquidation or statutory restrictions of building and loan associations, occasioned by the depression, the value spoken of was book value or withdrawal value, especially as to running shares. Full-paid shares (now income shares) also had a face value, i.e., the amount paid for the shares to the building and loan association, and that amount was specified on the face of the certificate and, of course, did not fluctuate. *Page 613 
Before the depression there was no outside market value for building and loan shares. The associations paid the full price of the shares, i.e., the withdrawal value thereof was the face value and there was no necessity, hence no opportunity, to get better prices on an outside market, but during and since the depression days, in closed or liquidating building and loan associations, as well as those which are still in operation, there is a market value, and this was the situation in 1938, when Rose Rosatto died, as well as when she executed her will.
The beneficiary under the third clause, Conroy, insists that testatrix meant market value when she spoke of par value, and complainant says that she meant face value.
The will was drawn by a Pennsylvania attorney and he attempted to testify as to his conversations with testatrix touching upon her understanding of the use of the phrase "par value," which testimony is clearly inadmissible.
What did testatrix mean, as that meaning is disclosed on the face of the will, i.e., by the words she used, or, if the words used in the will itself are not explanatory of her intention, is there any outside aid which is admissible in evidence from which her meaning may be inferred?
On the face of the stock certificate the following appears:
"PAID-UP SHARES $200 PER SHARE
This is to certify that, Rose Rosatto and Frank Rosatto has paid the full sum of Ten Thousand Dollars for Fifty shares of the paid up shares of the Islanders Building and Loan Association of Atlantic City, New Jersey."
At the time of testatrix' death the withdrawal value (if it could be obtained) was $10,000, but the evidence discloses that the market value was only $3,500. The book value of the running shares was $853.71, the withdrawal value $742.40 and the market value only $259.84, so that the market value of the shares was $3,759.84, the book or face value $10,853.71 and the withdrawal value $10,742.40. It was in 1938 that Rose Rosatto died and it was February 27th, 1937, that she executed her last will and testament, and the court takes judicial notice of the fact that during the year of 1937, as well as 1938, the Islanders Building and Loan Association *Page 614 
was not paying the withdrawal values of its income or running shares over the desk, but that notices of withdrawals had to be given and they were paid in installments under the statutes. The fact is, as disclosed by the testimony, that in 1938 Mrs. Rosatto attempted to withdraw her running shares and that she received $50 on account thereof and not the full amount, which she would have received had the association not been restricted in its payments.
It seems to me that when testatrix spoke of the par value of her building and loan shares she could not have meant the market value or she would have said so. Her certificate of full-paid "stock" stated the face value of each share and I think she considered that to be the par value. I know of no case in this state or any other which defines par value as that value is referable to building and loan shares. It is true that in EastRutherford Savings Loan and Building Association v. McKenzie,supra (at p. 376), the court refers to the "par value" of full-paid stock, as it did in Newark Twenty-one Building andLoan Association v. Zukerberg, 115 N.J. Eq. 579 (at p. 582);171 Atl. Rep. 804, and that in the use of the words "par value" the court in each case referred to face value, but in neither case was the court deciding that "par value" and face value were synonymous, nor that par value is legally fixed as being the same as face value, and the fact is that in the last above cited case the court was merely quoting a provision of the certificate.
Baldwin's Century Edition of Bouvier's Law Dictionary defines par value as follows:
"Par Value — A current phrase having no other meaning than the value of the pound sterling formerly fixed by law for the purpose of revenue. 10 Allen 44. It is commonly used to indicate theface value of bonds or stock. A phrase which implies a dollar in money for every dollar in security. Anderson; 26 Wend. 234."
46 C.J. 1174, 1175 says: "`Par' is a Latin word meaning equal," having the same meaning in English.
"In commercial and financial parlance it is used to denote a state of equality or equal value; an equality of actual with nominal value; and is used interchangeably with `par' value, *Page 615 
which means a dollar in money for every dollar in security," and further, as applied to bonds, it means "the value equal to the face of the bonds," and further, as applied to stock, "the face value thereof; the nominal value; but it has also been construed to mean an amount equal to the amount actually subscribed and paid for the stock."
In People v. Miller, 69 N.E. Rep. 1103, 1104; 177 N.Y. 461,
it is said that the words "par value" are ordinarily to be given the same meaning as face value when applied to bonds and stocks having a face value. In Security Trust Co. v. Ford,79 N.E. Rep. 474, 475, cited in 8 L.R.A. (N.S.) 263, it is said that "par value" means face value.
Using the words par value as indicating the face value of the stock, we find that the face value, as expressed on the certificate itself, in so far as the income shares are concerned, is $10,000. The running shares would not show a face value, other than that the book would show a paid in value, but be that as it may, the building and loan shares, at the time of the execution of her will, had a par or face value in excess of $10,000.
Using the words par value as implying one dollar in money for every dollar in security, it would represent the book value of both classes of shares, but whether we say that testatrix meant book or withdrawal value makes no difference, inasmuch as the face value of the income shares exceeds $10,000, as does the withdrawal and book value thereof.
Testatrix having said that the par value at the time of the execution of the will was in excess of $10,000, using the words par value as meaning book value or face value, she must have known that that value could not shrink by reason of any market conditions, unless or until she disposed of some of her holdings, but if she did dispose of a portion thereof, it seems evident that she wanted her nephew to get in cash the difference between the stock she disposed of and the remaining stock, figured at par value or face value, and not market value.
The market value at the time testatrix made her will was not $10,000 but only $3,759, as heretofore noted. She may not have known the exact market value but she is charged *Page 616 
with knowledge of the statutory restrictions on the payment of withdrawals in building and loan associations, and of the fact that by reason thereof shares were being sold on the market at less than their face, book or withdrawal value. Or if it be said that she is not charged with such knowledge at the time of the execution of her will, it appears from the evidence, as heretofore noted, that shortly thereafter testatrix endeavored to withdraw her running shares and by reason of the restriction aforesaid she could only get $50 on account thereof. If it had been her intention that her grandnephew was to receive under the third clause of her will, in all events, the sum of $10,000 in market value of building and loan shares, she most certainly had an opportunity to change her will so that it read "market value" instead of "par value."
My holding is that under paragraph 3 Conroy is not entitled to a cash payment of the difference between the market value of the building and loan shares and the sum of $10,000, but that he takes the shares as they stood at the time of the death of testatrix, having a then face, withdrawal and book value of over $10,000, but as to the income shares, testatrix, being a tenant in common with her husband, only had a one-half interest therein, so that Conroy takes the running shares, being the absolute property of testatrix, plus twenty-five shares of the fifty income shares, and the difference in cash.