McHugh, J.
This is an action for conversion by a client against her deceased lawyer’s estate. Included in the action is a claim by the client that she is entitled to the proceeds of what she claims was a fraudulent conveyance by the lawyer to his wife. The wife now has moved for partial summary judgment dismissing the fraudulent conveyance claim for a variety of reasons.
I. UNDISPUTED FACTS
A. The Conversion
The facts in the record must be viewed at this stage in the light most favorable to the plaintiff. So viewed, *657 it appears that plaintiff was a client of Theodore A. Glynn. Before his death in 1994, Mr. Glynn was an attorney admitted to practice in the Commonwealth of Massachusetts.
Mr. Glynn represented plaintiff in connection with the sale of her home in 1981. After the sale, Mr. Glynn told plaintiff that, because of his association with the Haymarket Cooperative Bank, he could obtain a favorable interest rate for her by depositing the sale proceeds at that Bank. Plaintiff instructed him to do so. Accordingly, he deposited the full sale proceeds of $65,433.33, in various interest-bearing accounts at the bank. During the ensuing years, the initial deposit earned interest so that, by October of 1989, the balance in plaintiffs account at the Bank stood at $78,515.36.
In 1989, Mr. Glynn paid plaintiff, pursuant to her instructions, approximately $6,000.00 from her account at the bank. In addition, at plaintiffs direction, he paid an additional $35,000.00 from the account to plaintiffs daughter. Sometime thereafter, Mr. Glynn converted the balance of approximately $43,000.00 to his own use without plaintiffs approval.[1]
B. The Glynn House
On or about June 4, 1982, Mr. Glynn and his wife took the title to property at 31 Monadnock Road in Wellesley “as joint tenants and not as tenants in common.” The property consisted of their primary residence and they lived there together thereafter. On October 22, 1990, Mr. and Mrs. Glynn as “tenants by the entirety” of the Monadnock Road property[2] conveyed the property entirely to Mrs. Glynn for a consideration of $1.00. At the time of the conveyance the property was encumbered by two mortgages totaling $746,464.00.
After the conveyance, Mr. and Mrs. Glynn continued to live in the Monadnock Road property and Mr. Glynn continued to pay the mortgages, the real estate taxes and all household expenses. The house was the most valuable asset that Mr. and Mrs. Glynn owned at the time it was conveyed. Indeed, the couple had no other asset or assets remotely approaching the house’s value.
On August 31, 1993, Mrs. Glynn conveyed the house to Mitchell and Diane Jacobs, husband and wife, for the sum of $1,050,000.00. Mr. and Mrs. Jacobs were bona fide purchasers for full and appropriate value and no one here makes any contention that any of the Glynn’s interest in the properly can be followed into their hands. See G.L.c. 109A, §9(1) (“matured” claims may be pursued against “any person except a purchaser for a fair consideration without knowledge of the fraud at the time of the purchase”). Mrs. Glynn used $150,000.00 of the proceeds to purchase a new house in which she currently resides and in which Mr. Glynn resided with her before his death. Mr. Glynn died on August 22, 1994.
II. SUMMARY JUDGMENT STANDARD
Until recently, the principles governing summary judgment in Massachusetts were those the Supreme Judicial Court had articulated in Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Under those principles,
[t]he party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he [or she] would have no burden on an issue if the case were to go to trial. .. If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment. (Footnote omitted.)
In the recent case of Kourouvacilis v. General Motors Corp., 410 Mass. 706 (1991), however, the Court embraced the principles set forth by the Supreme Court of the United States in Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Under those principles,
a party who moves for summary judgment has the burden of initially showing that there is an absence of evidence to support the case of the nonmoving party shouldering the burden of proof at trial. [3] That burden is not sustained by the mere filing of the summary judgment motion or by the filing of a motion together with a statement that the other party has produced no evidence that would prove a particular necessary element of this case. The motion must be supported by one or more of the materials listed in rule 56(c) and, although that supporting material need not negate, that is, disprove, an essential element of the claim of the party on whom the burden of proof at trial will rest, it must demonstrate that proof of that element at trial is unlikely to be forthcoming.
Kourouvacilis, supra, 410 Mass. at 714. As a consequence, there are now two ways in which the party moving for summary judgment may meet the burden imposed by Mass.R.Civ.R 56. The first of those follows traditional Massachusetts law:
[T]he moving party may submit affirmative evidence that negates an essential element of the nonmoving party’s claim.
Kourouvacilis, supra, 410 Mass. at 715 quoting Celotex Corp. v. Catrett, supra, 477 U.S. at 331-32 (Brennan, J., dissenting). Second, however,
the moving party may demonstrate to the court that the nonmoving party’s evidence is insufficient to establish an essential element of the nonmoving party’s claim ... If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law . . . Plainly, a conclusory assertion that the non-moving party has no evidence is insufficient . . . *658 Such a “burden” of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment . . . Rather, ... a parly who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.

Id.

Put another way,
a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he [or she] demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.
Kourouvacilis, supra, 410 Mass. at 716.
In applying that standard,
[w]here a moving party properly asserts that there is no genuine issue of material fact, “the judge must ask himself [or herself] not whether he [or she] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Ajudge’s mere belief that the movant is more likely to prevail at trial is not a sufficient basis for granting summary judgment.
Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
Those, then, are the principles the Court must apply to the motion defendant has filed here.
III. DISCUSSION
Mrs. Glynn bases her motion for summary judgment on the fraudulent conveyance claim principally on two points. First, she maintains that the undisputed facts reveal that the 1990 conveyance, even if carried out with a fraudulent intent, did not reduce the assets Mr. Glynn had available for creditors and thus that there was no fraudulent conveyance. Secondly, Mrs. Glynn maintains that even if there was a fraudulent conveyance, she succeeded to all of Mr. Glynn’s property by operation of law upon his death and that succession eliminated any claim plaintiff may have had to the assets. Her first contention is unpersuasive but, in my view, her second carries the day.
A. Reduction of Assets
On this record, there is a genuine issue of material fact concerning whether or not the 1990 conveyance was fraudulent.[4] Mrs. Glynn contends that, at the time of the transfer, the house had an appraised value of $800,000.00. As stated, the mortgages totaled approximately $760,000.00, leaving a balance of $40,000.00. Mrs. Glynn claims, however, that the $40,000.00 was not truly an equity in the property available to creditors because any disposition of the property would have resulted in taxation, costs and fees well in excess of that $40,000.00 balance. Accordingly, citing Richman v. Leiser, 18 Mass.App.Ct. 308, 311-12 (1984), Mrs. Glynn contends that the conveyance was not fraudulent regardless of what Mr. Glynn did or intended because it actually put nothing beyond the reach of creditors that had been within their reach before the conveyance occurred.
The difficulty — at this stage insurmountable — with that argument is the existence of a genuine issue of material fact as to the value of the property at the time Mr. Glynn conveyed it to Mrs. Glynn. Plaintiff has produced an affidavit from an at least facially qualified appraiser stating that the value of the property on October 22, 1990, the date of the transfer from Mr. Glynn to Mrs. Glynn, was $1 million. If that is so, then, of course, there was a substantial equity in the house — and more than enough to cover Mr. Glynn’s later debt to plaintiff — -that the conveyance ostensibly put beyond plaintiffs reach. The parties’ dispute as to the value of the house, therefore, is both genuine and material and its resolution will have a substantial impact on determining whether the conveyance was fraudulent.
B. Joint Tenancy
Mrs. Glynn next maintains that, even if a genuine issue of material fact as to whether the transfer was fraudulent, she nonetheless is entitled to summary judgment because she and Mr. Glynn held the properly as joint tenants.[5] As a consequence, she says, if the October 22, 1990 conveyance were set aside, then, upon her sale of the Monadnock Road property, she would hold the proceeds of that sale as a joint tenant with Mr. Glynn. See Smith v. Tipping, 349 Mass. 590 (1965); Ronan v. Ronan, 339 Mass. 460, 463 (1959) (tenancy by the entirety); Woodward v. Woodward, 216 Mass. 1, 2 (1913). Joint tenants hold property subject to a right of survivorship. Thus, she maintains, when Mr. Glynn died in August of 1994, all of the property she held as a joint tenant with him became hers by operation of law and eliminated any interest that plaintiff, as Mr. Glynn’s creditor, may have had in it. For that proposition Mrs. Glynn relies on Weaver v. City of New Bedford, 335 Mass. 644 (1957); Henderson v. Yarmouth, 335 Mass. 647, 648 (1957); Veteran's Agent of Randolph v. Rinaldi, 21 Mass.App.Ct. 901, 902, rev. denied, 396 Mass. 1104 (1985).
In my view, Mrs. Glynn’s position is correct. Property held in a joint tenancy is held subject to a right of survivorship. Neither an inchoate claim nor a perfected lien operates, in and of itself, as a partition or severance of the tenancy. Weaver v. City of New Bedford, 335 Mass. 644, 646-47 (1957). Death of one joint tenant before partition or severance thus vests title to *659 all of the property in the other and terminates any lien on the property designed to secure the decedent’s debts. Id.
The fact, if it was one, of a fraudulent conveyance does not change those principles; see Orbach v. Pappa, 482 F.Supp. 117, 120-21 (S.D.N.Y. 1979); Perrott v. Frankie, 605 So. 2d 118, 120 (Fla. App. 1992); The Franklin National Bank v. Freile, 173 A. 93, 96 (N.J. Eq. 1934), aff'd, 176 A. 167 (1934); at least in the absence of Mrs. Glynn’s participation in the fraud. Clarkson Co. v. Shaheen, 533 F.Supp. 905, 924 (S.D.N.Y. 1982). There is, on the present record, no genuine issue of material fact as to Mrs. Glynn’s fraud or participation, in any capacity other than a transferee, in any fraudulent conveyance by Mr. Glynn. Therefore, if the conveyance from Mr. and Mrs. Glynn to Mrs. Glynn were to be set aside as a fraudulent conveyance, the property would revert to its status as property held in a joint tenancy and would have passed to Mrs. Glynn on Mr. Glynn’s death.
To be sure, one could argue that, because a joint tenancy is one of the law’s disfavored creatures, Fulkton v. Katsowney, 342 Mass. 503, 504 (1961), the transfer from Mr. and Mrs. Glynn to Mrs. Glynn, if fraudulent, should be viewed as a severance of the joint tenancy; see Hale v. Hale, 332 Mass. 329, 331-32 (1955); Kerri’s, Inc. v. Kerri, 25 Mass.App.Ct. 290, 295-96 (1988); even though it was ineffective to transfer full title to the property to Mrs. Glynn. Neither parly has discussed the consequences of such a conclusion for this case.[6] More important, however, is that no case they have cited or that the court has reviewed has ever reached such a conclusion at least in the absence of participation in the fraud by the transferee tenant. I am unpersuaded that the disfavored nature of joint tenancies, alone or in combination with the law’s desire to protect a creditor’s legitimate claims, suggests that such a potentially harsh result to an innocent transferee is, or should be, the law of this Commonwealth.
ORDER
In light of the foregoing, it is hereby ORDERED that defendant’s motion for partial summary judgment should be, and it hereby is ALLOWED.

The exact date of the conversion does not appear in the record. In an affidavit he executed on August 4, 1994, shortly before his death, Mr. Glynn stated that the payment to plaintiffs daughter occurred “approximately two years ago” and that he converted the remaining proceeds thereafter. Accordingly, the conversion appears to have occurred at some point between August of 1992 and August of 1994.

At common law, when a husband and wife took title to real property as joint tenants, they created a tenancy by the entirety. Maddams v. Maddams, 352 Mass. 32, 33 (1967). Under G.L.c. 184, §7, last amended in 1979, however, the common-law rule was overridden and creation of a tenancy by the entirety required an express grant to husband and wife as tenants by the entirety. Nothing in the present record suggests the existence of such a grant and I therefore proceed, as do the parties, on the assumption that Mr. and Mrs. Glynn at all times held the property as joint tenants.

Kourouvacilis did not change the proposition that the moving must show the absence of any genuine issue of material fact before the non-moving party will be required to file any affidavit-based response of any kind. Smith v. Massimiano, 414 Mass. 81, 85-86 (1993).

Indeed, there are a series of factual issues with respect to whether the conveyance was fraudulent, although the parties have focussed only on the issue I shall discuss momentarily. The first issue has to do with when the conversion occurred and what Mr. Glynn’s economic status was at the time he conveyed the house. Both issues are relevant for purposes of determining whether a fraudulent conveyance within the meaning of G.L.c. 109A §4 took place, for that section defines as fraudulent “(e]veiy conveyance made . . . by a person who is or will be thereby rendered insolvent.” Mr. Glynn’s subjective intent in making the conveyance is relevant for purposes of applying G.L.c. 109A, §§6 and 7 which respectively define as fraudulent conveyances those made by a person who “intends or believes that he [or she] will incur debts beyond his [or her] ability to pay” and those “incurred with actual intent ... to hinder, delay or defraud either present or future creditors.”

see n. 2, supra

Presumably, upon a severance, Mr. and Mrs. Glynn would hold the property, and then the proceeds thereof, as tenants in common.